Michelle L. Roberts, State Bar No. 239092
E-mail: michelle@robertsdisability.com
Kristin P. Kyle de Bautista, State Bar No. 221750
E-mail: kristin@robertsdisability.com
Roberts Disability Law, P.C.
66 Franklin Street, Ste. 300
Oakland, CA 94607
Telephone: (510) 230-2090
Facsimile: (510) 230-2091

Attorneys for Plaintiff,
JEFFREY SUTTON

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY SUTTON,<br><br>Plaintiff,<br><br>vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | CASE NO.: 4:26-cv-06298<br><br>**COMPLAINT (ERISA)** |

Plaintiff Jeffrey Sutton ("Plaintiff") herein sets forth the allegations of his Complaint against Defendant Unum Life Insurance Company of America ("Unum" or "Defendant").

PRELIMINARY ALLEGATIONS

1. This action is brought under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under this code section as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, enforcing Plaintiff's rights under the terms of an employee benefit plan, and to clarify Plaintiff's rights to future benefits under the employee benefit plan described herein. Plaintiff seeks relief, including but not limited to, payment of the correct amount

of benefits due to him under the plan, prejudgment and post judgment interest, a Court order directing Defendant to recalculate and pay benefits at the correct rate going both past-due and going forward, and an award of attorneys' fees and costs.

2. Plaintiff was employed by Valero Services, Inc. and as a benefit of his employment, was a participant in a health and welfare benefit plan sponsored by Valero Services, Inc., which provided, among other benefits, long-term disability ("LTD") benefits (the "Plan"). The Plan is an employee welfare benefit program regulated by ERISA. At all times relevant hereto, the benefits to be paid pursuant to the Plan were insured by Unum under LTD policy number 564565 001 (the "Policy"). Pursuant to the terms and conditions of the Plan and Policy, Plaintiff is entitled to LTD benefits calculated on the basis of his correct Pre-Disability Earnings, which include all regularly scheduled overtime compensation.

3. Unum is a licensed insurance company headquartered in the State of Tennessee. It is a subsidiary of Unum Group. Unum offers group LTD policies in various states, including California. Unum was the claims administrator and fiduciary for the Plan. Unum makes decisions regarding eligibility for LTD benefits under the terms of the Plan. Unum is authorized to transact business in the Northern District of California and may be found in the Northern District of California.

4. Venue is proper in the Northern District of California pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because Defendant Unum Life Insurance Company of America is authorized to conduct and regularly conducts business within this District, and because Plaintiff has treated and continues to treat with physicians for his disabling conditions within this District.

5. Intradistrict Assignment – Pursuant to Civil L.R. 3-2(c) and 3-5, Plaintiff believes that this matter should be assigned to the Oakland division of the Northern District of California since a substantial part of the events or omissions which give rise to this action occurred in Alameda County.

/ / /

/ / /

/ / /

FIRST CLAIM FOR RELIEF
AGAINST THE UNUM LIFE INSURANCE COMPANY OF AMERICA
FOR PLAN BENEFITS, ENFORCEMENT AND CLARIFICATION OF RIGHTS,
PREJUDGMENT AND POSTJUDGMENT INTEREST,
AND ATTORNEYS' FEES AND COSTS
(29 U.S.C. § 1132(a)(1)(B))

6. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

7. At all times relevant, Plaintiff was employed by Valero Services, Inc. ("Valero") at Valero Refining - Benicia as a Refinery Operator and was a covered participant under the terms and conditions of the Plan.

8. Plaintiff was hired at Valero in 2009, and his schedule in the earlier years of his employment consisted of a schedule of 4 (12-hour) days on, and 4 days off. This was the predictable schedule he worked for many years, with sporadic unscheduled overtime shifts when another employee called out sick or had vacation.

9. That schedule changed drastically in approximately 2022. At that time, staffing in the Operations division at Valero Refining – Benicia had dwindled. Employees left and/or were terminated, and by Valero's own volition those positions were left vacant, leaving the work teams severely understaffed. Valero Refining – Benicia's Operations employees had been understaffed for years due to operators leaving the refinery for a better work/life balance. Additionally, since the Covid pandemic, some Refinery Operators were terminated from employment due to non-compliance with Valero's Covid vaccination requirements. Still more Refinery Operators retired.

10. It was apparent to Plaintiff that Valerio preferred to allow its Benicia Refinery to operate with skeleton crews in an effort to save costs on hiring a sufficient amount of operators knowing that the refinery was slated for closure in April of 2026. This impending closure and the severe understaffing led to Valero requiring what it termed as "mandatory" overtime shifts, often between 60-80 hours per week of additional shifts from employees still on board with the company. These "mandatory shifts" were assigned a regular ongoing basis in an effort to continue to run the refinery utilizing deficient staffing levels. Over time, Valero lost more Refinery Operators than had been hired. Employees like Plaintiff were frequently working without a supervisor which is needed to perform work in the control house and oversee operations.

Minimum staffing used to include an extra "Relief" operator, but this position was discontinued due to sheer lack of remaining personnel.

11. Due to the chronic understaffing situation, large swaths of "mandatory" work assignments were issued typically the week prior when supervisors were preparing work schedules for the upcoming workweek. It was not atypical for a supervisor to parse out 40-50 unassigned shifts at one time, with numerous employees signing off on multiple "mandatory" worksheets all at once. The dates on signed mandatory worksheets document how the overtime was designated, assigned and scheduled more than 24 hours prior to the shifts worked. The codes reflect numerous non-emergent reasons for the mandatory shifts, including shift vacancies, scheduled training, pre-planned vacations and/or leaves of absence for other employees. Such shifts were not unexpected absences, sudden workload increases or emergency situations as is contemplated for unscheduled overtime.

12. During the course of Plaintiff's employment, Plaintiff became disabled on December 16, 2024, as a result of his medical conditions and became entitled to benefits under the terms of the Plan.

Pursuant to the terms of the Plan, Plaintiff made a claim for benefits to Unum. Unum assigned Plaintiff claim number 25881411.

13. By letter dated June 3, 2025, Unum approved and began paying LTD benefits to Plaintiff effective July 8, 2025. In this letter, Unum stated,

> "Your benefit plan provides you with 60% of the income you were receiving before the date you became disabled. Your benefit is $6,533.07 per month and may be reduced by other income benefits you are receiving or may receive in the future, such as Social Security, Short Term Disability, State Disability, Workers' Compensation, Pension, and continued earnings (e.g, K1, bonuses, etc.)."

14. The Policy defines Pre-Disability "Monthly Earnings" ("Pre-Disability Earnings") as follows:

> "'Monthly Earnings' means your gross monthly income from your Employer in effect or approved just prior to the date your LTD disability benefits begin to accrue. It includes your total income before taxes. It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan, section 125 plan, or a flexible spending account. It includes income from scheduled overtime pay, but does not include income received from commissions, bonuses,

shift differential, unscheduled overtime, imputed income, any other extra compensation or income received from sources other than your Employer."

15. The policy language outlines only two forms of overtime—scheduled and unscheduled—but notably does not define either term. The Policy provides no criteria for distinguishing scheduled overtime from unscheduled overtime, and grants Unum no discretion to impose its own definition. In reporting Plaintiff's Pre-Disability Earnings to Unum, Valero failed to accurately characterize the nature of Plaintiff's overtime, omitting or misrepresenting the extent to which Plaintiff's overtime was scheduled. Plaintiff's time records reflect substantial hours designated as "mandatory" overtime. This "mandatory" overtime was regularly scheduled in advance by the Employer and required as a condition of Plaintiff's employment, despite there not being any characterization of such overtime on Plaintiff's paystubs. Unum failed to account for this mandatory (i.e., scheduled) overtime in determining Plaintiff's benefit amount.

16. Specifically, in conjunction with Plaintiff's LTD claim, his employer Valero reported to Unum the income he earned for his regular "4 on 4 off" schedule as his only pre-disability monthly earnings and failed to report all of his earnings from mandatory scheduled overtime—work that was scheduled in advance. Virtually half (or more) of Plaintiff's monthly income since 2022 through his date of disability has come from these mandatory and scheduled overtime shifts.

17. All told, Plaintiff's overtime work and earnings from 2023 and 2024, including the mandatory overtime that planned, approved and scheduled in advance, Plaintiff's monthly earnings average out almost double what Valero reported and Unum calculated. As a result, Plaintiff was entitled to receive the maximum gross monthly disability benefit from Unum. Unum's calculation of Plaintiff's gross monthly benefit was significantly lower, by approximately $3,467 each month.

18. By letter dated March 31, 2026, Plaintiff informed Unum of this miscalculation of his benefits. In this letter Plaintiff explained Unum's miscalculation of Plaintiff's Pre-Disability Earnings and provided evidence including, but not limited to, Plaintiff's Payroll Journal and Payroll Attendance Report reflecting mandatory overtime hours, Valero's Overtime Policy, Valero's Mandatory Overtime Form, and a declaration from Plaintiff explaining the scheduled

nature of the overtime. This evidence demonstrates that Plaintiff regularly worked overtime hours that were mandated and scheduled by Valero in advance, and that such overtime was not accurately reflected in the earnings information Valero reported to Unum. Plaintiff requested that Unum, in its capacity as Plan fiduciary and claims administrator, verify his earnings information, recalculate Plaintiff's gross LTD benefit, reimburse the resulting underpayment, and commit to accurately paying future LTD benefits.

19. By letter dated April 15, 2026, Unum confirmed receipt of Plaintiff's request for recalculation of his Pre-Disability Earnings. This letter outlined that Unum would be requesting verification of Plaintiff's gross monthly earnings and scheduled overtime prior to his date of disability from Plaintiff's employer.

20. On June 1, 2026, Plaintiff's counsel called Unum and left a voicemail for the assigned Senior Benefit Specialist, identified as "Benjamin," requesting a call back to confirm the status of Plaintiff's claim.

21. On June 2, 2026, Benjamin called Plaintiff's counsel and explained that Unum was waiting on information from the employer, with whom they had been corresponding via email. Benjamin further stated that he could not provide an estimated date by which Unum would issue a decision on Plaintiff's request.

22. Plaintiff's request for recalculation has been pending since March 31, 2026, a period of more than sixty (60) days. Under ERISA's claims procedure regulations governing disability benefit claims, 29 C.F.R. § 2560.503-1(f)(3), a plan administrator must render a decision on a claimant's request within forty-five (45) days of receipt, unless it notifies the claimant that special circumstances require an extension, provided the claimant is notified of the extension and circumstances within the initial forty-five (45) day period.

23. As of the date of this Complaint, Unum has not issued any verbal or written decision on Plaintiff's request, nor has Unum provided Plaintiff with any written notice of a special circumstance extension within the required initial forty-five-day period. Unum's failure to render a timely decision and failure to invoke the extension procedure constitute a violation of ERISA's mandatory claims procedure regulations. Pursuant to 29 C.F.R. § 2560.503-1(l)(2),

where a plan fails to establish or follow claims procedures consistent with the requirements of this section, a claimant is deemed to have exhausted his administrative remedies and is entitled to pursue any available remedies under ERISA § 502(a). Accordingly, Plaintiff is deemed to have exhausted his administrative remedies, and this action is timely and ripe for adjudication.

24. Defendant breached the Plan and violated ERISA in the following respects:

(a) It failed to pay LTD benefit payments to Plaintiff at the correct benefit amount at a time when Defendant knew, or should have known, that Plaintiff's Pre-Disability Earnings included regularly scheduled mandatory overtime under the terms of the Policy, and that Plaintiff was therefore entitled to a higher monthly benefit than Defendant was paying;

(b) It failed to provide a prompt and reasonable explanation of the basis relied upon under the terms of the Plan documents, in relation to the applicable facts and Plan provisions, for its calculation of Plaintiff's Pre-Disability Earnings and resulting monthly benefit amount;

(c) It failed, after Plaintiff submitted his request for recalculation of benefits and supporting evidence, to adequately describe to Plaintiff any additional material or information necessary for Plaintiff to perfect his claim/request, along with an explanation of why such material was necessary; and

(d) It failed to properly and adequately investigate the merits of Plaintiff's request and failed to provide a full and fair review of Plaintiff's claim as required by ERISA § 503, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1.

25. Plaintiff is informed and believes, and thereon alleges, that Defendant wrongfully underpaid and continues to underpay Plaintiff's LTD benefits under the Plan by miscalculating his Pre-Disability Earnings, and by other acts or omissions of which Plaintiff is presently unaware. Such additional acts or omissions may be discovered through the course of this litigation, and Plaintiff will amend this Complaint or otherwise make Defendant aware of such acts or omissions promptly upon their discovery.

26. As a proximate result of the wrongful conduct by Defendant, Plaintiff has damages

for loss of disability benefits in a total sum to be shown at the time of trial.

27. As a further direct and proximate result of this improper determination regarding Plaintiff's claim, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

28. At all relevant times, Plaintiff has been entitled to LTD benefits calculated on the basis of his correct Pre-Disability Earnings, including his regularly scheduled mandatory overtime, under the terms of the Plan and Policy. By miscalculating Plaintiff's Pre-Disability Earnings, underpaying Plaintiff's monthly LTD benefits, failing to respond to Plaintiff's request in a timely manner, and by related acts and omissions described herein, Defendant has violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder.

29. Unum policy number 564565 001 is subject to Cal. Ins. Code § 10110.6 and any grant of discretion therein is, accordingly, void. Thus, the Court's review of Unum's decision will be *de novo*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. An order declaring that Plaintiff's regularly scheduled mandatory overtime constitutes "scheduled overtime" within the meaning of the Policy and must be included in the calculation of Plaintiff's Pre-Disability Earnings and monthly long-term disability benefit;
2. An order directing Defendant to recalculate Plaintiff's Pre-Disability Earnings and monthly long-term disability benefit to include all regularly scheduled mandatory overtime worked by Plaintiff prior to his date of disability;
3. Payment of all past-due and underpaid long-term disability benefits resulting from Defendant's miscalculation of Plaintiff's Pre-Disability Earnings;
4. An order directing Defendant to prospectively pay Plaintiff's long-term disability benefits at the correct recalculated monthly rate for so long as Plaintiff remains disabled and entitled to benefits under the terms of the Plan;

5. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;
6. Payment of prejudgment and post-judgment interest as allowed for under ERISA; and
7. Such other and further relief as this Court deems just and proper.

DATED: June 24, 2026

ROBERTS DISABILITY LAW, P.C.

By: *<u>/s/ Kristin P. Kyle de Bautista</u>*
Kristin P. Kyle de Bautista
Attorneys for Plaintiff,
JEFFREY SUTTON